USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __9/30/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALONZA I. KNOWLES,                                    :
                                                       :          21-CV-2569 (GHW) (RWL)
                          Plaintiff,                   :
                                                       :
          - against -                                  :          **REPORT AND RECOMMENDATION**
                                                       :          **TO HON. GREGORY H. WOODS:**
SAINT BARNABAS HOSPITAL, N&N                          :          **MOTIONS TO DISMISS**
APARTMENTS, and CITY OF NEW YORK,                     :
                                                       :
                          Defendant.                   :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

        Plaintiff Alonza I. Knowles ("Plaintiff" or "Knowles"), proceeding pro se, filed this

action to recover damages for having been involuntarily hospitalized and forced to take

anti-psychotic medication.  Knowles claims that the superintendent in his apartment

building reported him to the police as showing signs of mental illness, that an emergency

service then took him to Saint Barnabas Hospital (the "Hospital"), that Hospital personnel

administered anti-psychotic medication to him over a course of at least two weeks, and

that his apartment was burglarized while he was hospitalized.

        Asserting claims for medical malpractice, fraud, negligence, breach of contract,

burglary, conspiracy, and violation of his civil rights, Knowles has sued the Hospital, his

landlord N&N Apartments (the "Landlord"), and the City of New York (the "City")

(collectively, "Defendants").  Each of the three Defendants now moves to dismiss the

action for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure

12(b), and for failure to comply with the pleading standards of Federal Rule of Civil

Procedure 8.  For the reasons that follow, the Court recommends that Defendants'

motions be GRANTED and the Knowles' claims dismissed without prejudice.

**FACTUAL BACKGROUND**

As required on a motion to dismiss, the Court accepts as true all well-pled allegations of the Complaint and draws all reasonable inferences in favor of Knowles, the non-moving party.  The Complaint is by no means a model of clarity.  It is unduly repetitive, at times confusing to follow, and contains irrelevant material.[1]  That said, applying a liberal reading afforded to pro se plaintiffs, Knowles' allegations and claims can be coherently distilled to the following.

Knowles has a history of hospitalization for psychosis.  (Compl. Ex. H at ECF 38-39.)  Medical records attached to the Complaint show that he was diagnosed with "schizoaffective disorder – bipolar type" for which he received various medications at Lincoln Medical Center.  (Compl. Ex. H at ECF 38-40.)  On July 14, 2020, Knowles visited Lincoln Medical Center for medication management, was determined to be stable, and left feeling he did not need further outpatient psychiatric care.  (Compl. Ex. H at ECF  36-37.)

Knowles resided in an apartment building located in the Bronx, New York operated by the Landlord.  (Compl. at ECF 3.)  On October 22, 2020, the building superintendent made a "fraudulent" statement to the police that Knowles "was showing signs of mental

---

[1] For instance, the Complaint refers to – among other subjects irrelevant to the claims asserted – John Gotti, terrorism, and "the media who shape and sway public opinion." (Compl. at ECF 6.)  Knowles' response to the motion to dismiss is filled with even more irrelevant material such as Covid statistics; Knowles' prophesizing on the subway; letters purportedly received from President Obama; and Knowles' purported popularity in the White House, State of New York and City of New York.  (Dkt. 51 at 6-10.)  Throughout the Complaint and his motion response, Knowles places particular emphasis on his experience as a boxer, librettist and author of musical plays; he also presents himself as a male model and a Broadway star.  (*E.g.*, Compl. at ECF. 1, 5; Dkt. 51 at 3-4, 10.)

illness."[2]  (Compl. at ECF 5.)  Acting on that information, police officers from the New York City Police Department ("NYPD") came to Knowles' apartment, and paramedics from the New York City Fire Department took him to the Hospital "to be treated for pneumonia." (Compl. at ECF 3.)

On October 26, 2020, a doctor Eduardo at the Hospital told Knowles that the doctor had treated him for pneumonia and that he was doing much better.  (Compl. at ECF1.) Doctor Eduardo confirmed that he would discharge Knowles on October 30, 2020 and shook Knowles' hand.  (Compl. at ECF 1.)  On October 28, 2020, however, Knowles was transferred to the Hospital's psychiatric unit and was told that he had been transferred due to his behavior in the emergency room.  (Compl. at ECF 2.)

Knowles remained in the Hospital until at least November 12, 2020.  On that day, he participated in a remote judicial hearing, during which a New York State court judge overruled his objection to taking anti-psychotic medication.  (Compl. at ECF 3 and Ex E at ECF 28-31.)  The Complaint attaches a signed judicial order from that day finding that Knowles "lack[ed] the capacity to make a reasoned decision with respect to his treatment"

---

[2] With its motion papers, the City submitted a police "Sprint Report" and transcript of a 911 call made by the building superintendent on October 22, 2020.  (Declaration of Joshua Kaufman, filed July 8, 2021, Ex. B-C.)  The Sprint Report shows that an EMS ambulance was dispatched to Knowles' apartment building to attend to a "violent" male who was "acting out."  (Sprint Report at ECF 1-2.)  As set forth in the 911 transcript, the superintendent reported that Knowles was violent, "not on his medicine," "going crazy," and was going to hurt someone if the police did not come quickly.  The Court takes judicial notice of these documents, not for the truth of the matters asserted therein, but rather as indicia of what was reported to the police.  *See Crown Heights Shorrim Volunteer Safety Patrol, Inc. v. City of New York*, No. 11-CV-329, 2014 WL 4804869, at *2 (E.D.N.Y. Sept. 25, 2014) (dismissing plaintiff's false arrest claims and taking judicial notice of, among other things, NYPD Sprint Report).  That said, the Court does not rely on either document in reaching its recommendation.

and authorizing the Hospital to administer anti-psychotic medication to Knowles over his objection. (Compl. Ex. E at ECF 29-30.)

During Knowles' stay at the Hospital, his apartment was burglarized, and several items were stolen, including $30 in cash, a gold ring valued at $250, 15 letters (allegedly from President Donald J. Trump), and an identification card.  (Compl. at ECF 2, 4.)  Several months later, on March 22, 2021, Knowles filed a complaint with the Civilian Complaint Review Board alleging that the police were corrupt and an accessory to fraud and burglary of his apartment because the police did not investigate or follow up with Knowles.  (Compl. at ECF 3-4.)

Knowles claims that the Landlord, the NYPD, and the judge who authorized the Hospital to medicate Knowles over his objection conspired against him to administer anti-psychotic medicine against his will.  (Compl. at ECF 3.)  He seeks one million dollars in damages.  (Compl. at ECF 6.)  Knowles asserts claims for professional malpractice (based on the Hospital's failure to discharge him on October 30, 2020), negligence (also based on the Hospital's failure to discharge him on October 30, 2020), fraud (based on the superintendent's reporting Knowles to the police as displaying signs of mental illness), breach of contract (based on Dr. Eduardo's not having discharged Knowles on the date to which they agreed orally), accessory to burglary of his apartment (based on the break-in and theft from his apartment while detained at the Hospital), and conspiracy by all three Defendants in carrying out the foregoing.  (Compl. at ECF 2-6.)  Knowles also asserts that his human rights were violated and suggests that he was deprived of "life, liberty, and the pursuit of happiness" as endowed by the United States Constitution.  (Compl. at ECF 5-6.)

4

## PROCEDURAL BACKGROUND

Knowles commenced this action on March 25, 2021.  (Dkt. 2.)  On May 2, 2021, the case was referred to the undersigned for general pretrial management, as well as for issuing reports and recommendations on dispositive motions.  (Dkt. 24.)  The Hospital filed its motion to dismiss on July 7, 2021; the Landlord and the City filed their motions to dismiss on the next day.[3]  (Dkt. 41-45.)

On August 20, 2021, the City filed a letter indicating that Knowles had not filed any opposition to the motions to dismiss and requesting the Court to deem the motions fully submitted.  (Dkt. 49.)  The Court denied that request and issued an order giving Knowles a final opportunity to oppose.  As the order explained, Knowles had to file any opposition papers by September 13, 2021, and, in the absence of opposing papers, the Court would resolve the motions on the record as it then stood and warned that the Court may dismiss Knowles' claims in whole or in part for failure to oppose the motions.  (Dkt. 50.)

On August 30, 2021, Knowles filed a ten-page single-spaced handwritten document sworn to under penalty of perjury to which he attached a medical record and his resume.  In that filing, Knowles requested default judgment against the Defendants. (Dkt. 51.)  As Defendants had not defaulted, the Court denied Knowles' request but stated that the Court would consider, to the extent relevant, Knowles' filing in ruling on the motions to dismiss.  The Court also reminded Knowles that he had until September 13,

---

[3] As an alternative to dismissal for failure to state a claim, the City moves for summary judgment.  The Court finds grounds to dismiss for failure to state a claim, and therefore finds no need to convert the motion to one for summary judgment pursuant to Fed. R. Civ. P. 56(d).

2021 to file any opposition to the motions to dismiss and that there would no further extensions.  (Dkt. 52.)

The next day, September 1, 2021, Knowles filed a letter saying that he had already replied to the Defendants' motions to dismiss and again asking for default judgment.[4] (Dkt. 53.)  On September 24, 2021, the City filed a letter stating that it found no need to submit a reply and asked that its motion be deemed fully submitted.  On September 27, 2021, the Hospital and the Landlord filed replies essentially resting on their earlier arguments.  (Dkt. 55, 57.).  Accordingly, the motion is ripe for decision.

## LEGAL STANDARDS

### A.    Pleading Requirements Under Rule 8

Federal Rule Of Civil Procedure 8 requires that a complaint "contain … a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2) ("Rule 8").  "The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks omitted). "[C]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport

---

[4] To the extent Knowles' request for default judgment on September 1, 2021 may be considered a request for reconsideration of the Court's denial of his earlier request for default, the Court denies the motion.  Knowles has not presented any new fact or law or any oversight of fact or law that would warrant reconsideration.  None of the Defendants defaulted as they each filed motions to dismiss in response to the Complaint.

with [Rule 8] and must be dismissed." *Coon v. Benson*, No. 09-CV-230, 2010 WL 769226, at *3 (S.D.N.Y. March 8, 2010) (internal quotation marks and citation omitted).

"When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, or to dismiss the complaint." *Salahuddin*, 861 F.2d at 42 (internal citation omitted).  "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.*

**B.    Motion To Dismiss For Failure To State A Claim**

Under Federal Rule Of Civil Procedure 12(b)(6) , a pleading may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1959).  In considering a motion to dismiss, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014).  However, this tenet

is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  "Rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level … *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and brackets omitted).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct at 1966.

For the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint.  *See Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."  *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (quoting *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y.1994)).

### C.    Review Of Pro Se Pleadings

"Pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank Of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Federal Bureau Of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  "[T]he Second Circuit, as a general matter, is solicitous of pro se litigants, enforcing standards of procedural leniency rather than holding them to the rigidities of federal practice." *Massie v. Metropolitan Museum Of Art*, 651 F. Supp.2d 88, 93 (S.D.N.Y. 2009); *see also Weixel v. Board. Of Education*, 287 F.3d 138, 147-48 (2d Cir. 2002) (reversing dismissal where district court failed to construe pro se plaintiff's complaint liberally); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) ("Once a pro se litigant has done everything possible to bring his action, he should not be penalized by strict rules which might otherwise apply if he were represented by counsel.").

That said, "even pro se plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level,'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965), and must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Perry v. Mary Ann Liebert, Inc.*, 765 F. App'x 470, 473 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1960). Similarly, a pro se plaintiff is subject to the short-and-plain pleading requirements of Rule 8. *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019).

**DISCUSSION**

**A.    The Complaint Satisfies Rule 8**

Each Defendant argues that the Complaint should be dismissed because it fails to satisfy the requirements of Rule 8 in that the Complaint is not "plain and short" and does not fairly apprise the Defendants of the claims against them.   The Court disagrees. "[W]hile [plaintiff]'s amended complaint may not represent the paradigm of notice pleading, it is not the incomprehensible 'labyrinthian prolixity of unrelated and vituperative charges' that Rule 8 was intended to curb."   *Harnage*, 916 F.3d at 142 (reversing *sua sponte* dismissal of pro se complaint under Rule 8) (quoting *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972)).

The Complaint is only six pages long and broken down into paragraphs (albeit some quite long).[5]   Although repeating some of the same allegations over and over, the

---

[5] In invoking Rule 8, the City points to the Complaint's attaching 42 pages of "unrelated exhibits."   (City Mem. at 9.)   The Court disagrees with that characterization.   The Complaint attaches, among other relevant items, the incident report Knowles filed with the police about burglary of his apartment (Compl. at ECF 9); a letter from Knowles designated as a notice of appeal in the state court action in which his objection to taking anti-psychotic medication was overridden (Compl. at ECF 13-15); a letter from Knowles to the New York State Office Of Mental Health complaining about his being transferred to the psychiatric unit at the Hospital (Compl. at ECF 19-21); a responding letter to Knowles from the New York State Office Of Mental Health explaining why he was transferred to the psychiatric award (Compl. at ECF 17); the New York State court order authorizing the Hospital to administer anti-psychotic medication to Knowles (Compl. at ECF 28-31); and medical records cited in the Complaint as evidence that Knowles was not mentally ill (Compl. at ECF 35-44).   Even the specific items selectively cited by the City arguably have a modicum of relevance.   Knowles' resume, correspondence concerning his plays, and his Dramatists Guild of America membership card may be construed as included to support Knowles' assertion of mental fitness.   (Compl. at ECF 16, 22-27.)   And his correspondence to Donald Trump may have been included to lend credence to his claim that he had received letters from the White House that were taken from his apartment. (Compl. at ECF 33-34.)   To be sure, the Complaint and attachments evince flights of fancy

Complaint is suitably plain and short.  Affording the Complaint the solicitude due to a pro se plaintiff, a logical factual narrative can be discerned as set forth above.  And although the Complaint does not formally plead which causes of action are asserted against which Defendants, the Court has little difficulty making that determination.

Specifically, Knowles asserts claims for (1) professional malpractice and negligence against the Hospital based on the Hospital's failure to discharge him on October 30, 2020; (2) breach of contract against the Hospital for not having discharged Knowles on the date to which he and Dr. Eduardo allegedly orally agreed; (3) fraud against the Landlord based on the superintendent's reporting Knowles to the police as displaying signs of mental illness; (4) accessory to burglary of his apartment against all three Defendants, based on the break-in and theft from his apartment while detained at the Hospital; and (5) conspiracy against all three Defendants.  Read liberally, the Complaint also asserts a constitutional civil rights claim for unlawful seizure and involuntary hospitalization against the City, and conspiracy among the three Defendants to deprive him of his civil rights.[6]

_____

and possibly delusional states of mind, but they do not disqualify the Complaint under Rule 8.

[6] As noted above, the Complaint expressly invokes constitutional protections to life, liberty, and the pursuit of happiness.  The City thus is incorrect in asserting that the Complaint does not allege any constitutional violation.  (City Mem. at 10.)  The City nevertheless addresses such a claim, recognizing that the Court may construe – as it does – the Complaint to assert a Fourth Amendment Claim for unlawful seizure and confinement.  (City Mem. at 10.)

Accordingly, the Court finds that the Complaint complies with the pleading standards of Rule 8.  That does not mean, however, that the Complaint satisfies other requirements as discussed next.[7]

## B.     The Complaint Fails To State A Federal Claim For Relief

Knowles alleges that his constitutional rights were violated when the police and paramedics took him into custody and transported him to the Hospital, and when the Hospital placed him in the psychiatric unit and administered anti-psychotic drugs.  The Complaint's allegations fail to state an actionable constitutional claim against the City, however, as the Complaint does not allege an unconstitutional municipal policy and practice.  Nor does the Complaint sufficiently allege a claim for conspiracy to deprive Knowles of constitutional rights that could give rise to liability against non-state actors such as the Landlord and Hospital.

### 1.     No § 1983 Claim

The vehicle for a litigant like Knowles to assert a constitutional civil rights claim against government actors is 42 U.S.C. § 1983 ("§ 1983").  To state a cause of action under § 1983, "'a plaintiff must allege that some person acting under color of state law deprived him of a federal right.'"  *Ahlers v. Rabinowitz*, 684 F.3d 53, 60-61 (2d Cir. 2012) (quoting *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)).  Because § 1983 does not provide its own substantive rights, plaintiffs must identify the federally protected

---

[7] Knowles' fraud claim also should be dismissed as it does not meet the heightened pleading requirements for claims of fraud under Federal Rule Of Civil Procedure 9(a). The Court does not base its recommendation on that ground, however, due to its recommendation to decline supplemental subject matter jurisdiction over all state law claims as discussed below.

right that was allegedly violated.  *See Gonzaga University v. Doe*, 536 U.S. 273, 285, 122 S. Ct. 2268, 2276 (2002) (plaintiffs cannot simply claim a violation of § 1983, because § 1983 "'by itself does not protect anyone against anything'") (quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S. Ct. 1905, 1916 (1979)). Accordingly, the plaintiff must show that (1) the defendant acted under color of state law and that (2) as a result of the defendant's actions, the plaintiff suffered a denial of federal statutory rights or constitutional rights or privileges. *Annis v. County Of Westchester*, 136 F.3d 239, 245 (2d Cir.1998). Additionally, "in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998); *see also White v. City Of New York*, No. 16-CV-6183, 2017 WL 3575700, at *5 (S.D.N.Y. Aug. 17, 2017) (dismissing Plaintiff's § 1983 claim because police officer was not the proximate cause of Plaintiff's alleged injuries). Here, the constitutional right suggested by Knowles' Complaint is the right to be free from seizure and confinement under the Fourth Amendment of the United States Constitution.

Although the Complaint, liberally read, asserts a § 1983 claim for violation of Knowles' Fourth Amendment rights, it fails to name an individual person acting under color of state law.  Instead, it names the City as a defendant.  Municipalities, however, cannot be vicariously liable under § 1983 for their employees' acts. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2018 (1978).   Instead, municipalities are only liable under § 1983 for constitutional deprivations resulting from a governmental policy or custom. *Id*. , 98 S. Ct. 2018.

A plaintiff may demonstrate that such a  policy or custom exists by introducing evidence of one of the following:   "(1) a formal policy officially endorsed by the

municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Jones v. Westchester County*, 182 F.Supp.3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F.Supp.2d 261, 276–77 (S.D.N.Y. 2010)). To prevail on a *Monell* claim, a plaintiff must also show that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation" he suffered. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

The City is a municipality and therefore cannot be sued as a defendant absent a viable *Monell* claim.  The Complaint, however, alleges none of the facts that would establish a policy or practice claim.  The facts alleged in the Complaint concern a specific one-time incident in which Knowles was hospitalized in October to November 2020.  The Complaint does not allege a history of similar incidents that might indicate a customary practice.  Nor does it allege the existence of a particular policy.  The Complaint does generally allege that the police and government are "corrupt."  (Compl. at ECF 5-6.)  But that hardly makes for a claim that the police or other City actors have a policy or practice of hospitalizing and medicating persons who have been fraudulently reported and wrongly found to be psychotic.  Accordingly, the Complaint fails to state an actionable civil rights

claim against the City.[8]  *See, e.g., Anthony v. City Of New York*, 339 F.3d 129, 140 (2d Cir. 2003) (affirming grant of summary judgment because plaintiff "has not shown that there is an official policy or custom of arbitrarily seizing and hospitalizing disabled individuals"); *Meyers v. Sullivan*, No. 14-CV-7448, 2017 WL 5125767, at *4 (E.D.N.Y. Aug. 23, 2017) (dismissing *Monell* claim where plaintiff's action "arises from a single incident that led to his hospitalization and forced medication.  It is well-settled that 'a single incident of unconstitutional activity is not sufficient to impose liability under Monell.'") (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824, 105 S. Ct. 2427, 2436 (1985)); *Matthews v. City Of New York*, No. 15-CV-2311, 2016 WL 5793414, at *9-10 (S.D.N.Y. Sept. 30, 2016) (dismissing *Monell* claim making conclusory allegation that the municipal defendants engaged in a consistent practice of "wrongfully arresting and hospitalizing individuals who do not require in-patient mental health treatment, and falsifying documents to justify forced psychiatric hospitalizations").

## 2.    No § 1985 Conspiracy Claim

Federal law provides redress for conspiracies to deprive persons of their constitutional rights, even in the absence of a state actor.  The statutory vehicle for doing

---

[8] The City also argues that any Fourth Amendment constitutional claim should be dismissed because the Complaint does not name an individual defendant and therefore fails to allege the requisite personal involvement of a state actor.  (City Mem. at10.) Although personal involvement is a required element, the Court deems *Monell* analysis to be the more appropriate framework for addressing the Complaint's naming the City but not any individual as a defendant.   Additionally, the City argues that any Fourth Amendment claim must be dismissed because the seizure and confinement of Knowles was privileged under the New York State Hygiene Law and because there was probable cause to seize and confine Knowles based on the police report and 911 call.  (City Mem. at 10-14.)  In light of the Complaint's failure to state a cognizable claim against the City, however, the Court declines to address the City's merits-based argument.

so is 18 U.S.C. § 1985.  Knowles generally alleges a conspiracy among the Defendants, but the Complaint fails to allege a viable claim for a conspiracy claim grounded in federal law.

Section 1985 addresses three different types of conspiracies, namely those aimed at (1) interference with law enforcement, (2) obstruction of justice, and (3) deprivation of equal rights and privileges.  18 U.S.C. § 1985(1)-(3).  The Complaint does not plausibly allege any of those.  To assert a viable claim under § 1985, a plaintiff must allege, among other elements, an agreement or meeting of the minds between the alleged conspirators to achieve an unlawful end. *See Robinson v. Allstate Insurance. Co.*, 508 F. App'x. 7, 9 (2d Cir.2013) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir.2003)).  The Complaint makes no plausible allegations of such a meeting of the minds.  Further, of the three types of conspiracies, the least inapt would be deprivation of rights and privileges under § 1985(3).  But to establish a violation of § 1985(3), a plaintiff must establish, among other elements, that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus...." *Id.* (quoting *Britt v. Garcia*, 457 F.3d 264, 270 n. 4 (2d Cir.2006)) (internal quotation omitted); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 419 (2d Cir.1999); *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1088 (2d Cir.1993).  The Complaint provides no factual assertions that would establish the requisite discriminatory animus. Accordingly, any claims pursuant to § 1985 should be dismissed for failure to state a claim.

**C.    The Court Has No Federal Subject Matter Jurisdiction, And The State Claims Should Be Dismissed**

Although the parties did not raise the issue, the Complaint should be dismissed based on the absence of federal subject matter jurisdiction.  Federal courts have subject

matter jurisdiction over two types of cases – those involving questions of federal law, or disputes between citizens of different states where the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1331 (vesting federal district courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"); 28 U.S.C. §§ 1332 (vesting federal district courts with jurisdiction over disputes between citizens of different states where the amount in controversy exceeds $75,000).  Neither type of subject matter jurisdiction exists here.

The only federal claims arguably asserted by the Complaint are the Fourth Amendment claim pursuant to § 1983 and civil rights conspiracy claim pursuant to § 1985, neither of which stand up to scrutiny for the reasons explained above.  All other claims – malpractice, negligence, fraud, breach of contract, accessory to burglary, and conspiracy to commit any or all of those – are state law claims.  Accordingly, there is no federal question jurisdiction.  Nor is there diversity jurisdiction.  The Complaint alleges that Knowles, the Hospital, the Landlord, and the City all reside in New York, and nothing in the Complaint suggests that any Defendant has citizenship other than in New York. (Compl. at ECF 1.)

Where, as here, the Court dismisses all federal claims, and there is no diversity jurisdiction over the remaining state law claims, the Court may exercise its discretion to retain jurisdiction over the state law claims or dismiss them without prejudice. 28 U.S.C. § 1367(c)(3).  In this instance, where the case is only at the pleading stage, I recommend that the Court decline to retain jurisdiction and dismiss the state law claims without prejudice.  *See, e.g., Blackrock Balanced Capital Portfolio v. HSBC Bank USA, National Association*, 95 F. Supp. 3d 703, 708-09 (S.D.N.Y. 2015) (district court "may decide to

refuse to exercise supplemental jurisdiction if ... the district court has dismissed all other claims over which it had federal jurisdiction...."); *Rosario v. International Auto Mall & Leasing Center, Inc.*, No. 12 Civ. 4059, 2013 WL 1144893, at *4 (S.D.N.Y. March 19, 2013) (dismissing state claim where the court "has no independent basis for federal jurisdiction"); *Rodriguez v. Mount Vernon Hospital*, No. 09 Civ. 5691, 2011 WL 3874814, at *2 (S.D.N.Y. Sept. 2, 2011) ("Without any federal claim, this Court declines to exercise supplemental jurisdiction over Plaintiffs remaining state law claims") (citing *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001).  In the event Knowles were to replead a proper federal claim, the Court could then elect to exercise jurisdiction over properly pled state law claims.  Otherwise, Knowles can pursue his claims in state court.[9]

## CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT Defendants' motions to dismiss, and that Knowles' claims be dismissed without prejudice to filing an amended complaint or filing his claims in State court.

## DEADLINE FOR OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable Gregory H. Woods, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the

---

[9] Although the Court does not base this report and recommendation on the merits of Knowles' state law claims, the Defendants make strong arguments as to why those claims should be independently dismissed for failure to state a claim.

undersigned, 500 Pearl Street, New York, New York 1007. **Failure to file timely objections will result in waiver of objections and preclude appellate review.**

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  September 30,2021
        New York, New York

19